**Below is a Memorandum Decision of the Court.**



_____
**Marc Barreca**
**U.S. Bankruptcy Court Judge**

(Dated as of Entered on Docket date above)

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| B-1208 PINE, LLC, | Case No. 24-10088-MLB |
| Debtor(s). | |
| SJS MECHANICAL SERVICES, LLC, | Adversary No. 24-01010-MLB |
| Plaintiffs, | |
| v. | MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT |
| WALSH CONSTRUCTION COMPANY II, LLC; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, Bond No. 107580832 and Bond No. 100900200201037, | |
| Defendants. | |
| WALSH CONSTRUCTION COMPANY II, LLC, an Illinois limited liability company, | |
| Plaintiff, | |
| v. | |
| PINE ESKER, LLC, a Washington limited liability company; B-1208 PINE LLC, a Delaware limited liability company; BANK OZK, a foreign entity; FIRST FINANCIAL NORTHWEST BANK, a foreign entity; and PIVOT | |

**MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT** - 1

APARTMENT LENDER LLC, a
Delaware limited liability company,

Defendants.

## INTRODUCTION

This matter came before me on the Motion for Partial Summary Judgment Re: Lien Priority (hereafter, the "Motion") of Walsh Construction Company II, LLC (hereafter, "Walsh"). Adv. Dkt. 28.[1] I am asked to determine whether Walsh's construction lien has priority over the subsequent deed of trust of Pivot Apartment Lender, LLC (hereafter, "Pivot Lender") regarding real property commonly known as the Pivot Apartments, located at 1208 Pine Street in Seattle, Washington (hereafter, the "Property") and owned by B-1208 Pine, LLC (hereafter, the "Debtor").

Walsh argues that pursuant to Washington's mechanics' lien statute, RCW 60.04.061, its lien attached to the Property three years before Pivot Lender recorded its deed of trust, and accordingly, Walsh's lien is senior in priority. Conversely, Pivot Lender argues that its deed of trust should be equitably subrogated to a senior position by virtue of having paid off the previous senior secured interest of Bank OZK. The short answer is that under Washington law Pivot Lender would generally be equitably subrogated, even as to mechanics' liens, if the requirements of the Restatement (Third) of Property: Mortgages § 7.6 (hereafter the "Restatement § 7.6") were met. Walsh has failed to establish undisputed facts entitling it to a determination that its lien position is senior to

---

[1] All citations herein to "Adv. Dkt." and "Bankr. Dkt." refer to this Adversary Proceeding, Case No. 24-01010, and B-1208 Pine, LLC's bankruptcy case, Case No. 24-10088, respectively.

MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT - 2

the entirety of Pivot Lender's security interest. Therefore, for the following reasons, Walsh's Motion is denied.

## UNCONTESTED FACTS

In April of 2019, Walsh entered a contract with Pine Esker, LLC for the construction of the Property. On June 14, 2019, the Debtor took possession of the Property. On June 17, 2019, the Debtor took out a construction loan from Bank OZK in the amount of $21,910,000 and a deed of trust was recorded against the Property. Prior to commencing construction, Walsh executed a document stating that its construction lien was subordinate to Bank OZK's deed of trust. On July 16, 2019, Walsh commenced construction on the Project. By May 17, 2022, Walsh and its subcontractors had completed construction and the Debtor took possession of the Property. On November 2, 2022, Pivot Lender lent the Debtor approximately $32,000,000 (hereafter, the "Pivot Lender Loan"), of which $20,035,537.27 was applied to pay off the obligation to Bank OZK. Adv. Dkt. 30, Benjamin Decl., Pt. 1 and Adv. Dkt. 38, Lyon Decl., Ex. E. On December 16, 2022, Walsh recorded a $4,256,401 construction lien against the Property and filed its complaint for foreclosure. At some point, although the date is unclear from the declarations submitted, Walsh "bonded around certain subcontractors' liens" in asserted reliance on its perceived first-position lien. Adv. Dkt. 30, Benjamin Decl., Pt. 1.

## PROCEDURAL BACKGROUND

On December 16, 2022, Walsh filed a complaint against the Debtor, Pivot Lender, and other entities in King County Superior Court seeking to foreclose its

lien on the Property. On January 16, 2024 the Debtor filed a Chapter 11 voluntary bankruptcy petition. Bankr. Dkt. 1. On January 23, 2024 Pivot Lender removed the lawsuit to the bankruptcy court, initiating this adversary proceeding. Adv. Dkt. 1. On March 7, 2024, Walsh filed a motion to withdraw the reference to the United States District Court for the Western District of Washington, pursuant to 28 U.S.C. § 157(b) and Local Bankruptcy Rule 5011-1, which remains pending. Adv. Dkt. 17.

## JURISDICTION

I have jurisdiction over the parties and subject matter of this Motion pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 1334.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a), made applicable to bankruptcy adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific

facts showing that there is a genuine issue for trial." *Id.* While all justifiable inferences are to be drawn in favor of the non-moving party, when the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *Matsushita Elec. Indus Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citations omitted).

## ARGUMENTS OF THE PARTIES

### 1. Walsh

Walsh argues that Pivot Lender is not equitably subrogated to Bank OZK's priority position based on the following assertions: 1) Washington's mechanics' lien statute must be liberally construed in favor of those persons falling under its protections, and that the statutory priority scheme takes precedence over the application of equitable subrogation; 2) equitable subrogation would be inappropriate because Pivot Lender had knowledge of Walsh's lien; 3) Walsh would be materially prejudiced by subrogation as the Pivot Lender Loan amount and terms differ from those of the Bank OZK loan; and 4) that Walsh would be materially prejudiced by equitable subrogation in that it bonded around the subcontractors' liens in reliance on its perceived senior status.

### 2. Pivot Lender

In response to Walsh's argument that the new loan is for a different amount and on different terms than the Bank OZK loan, Pivot Lender concedes that it seeks to "split its lien, only claiming seniority to Walsh for the exact amount of Debtor's obligation to Bank OZK and nothing more." Adv. Dkt. 37, p. 9.

Pivot Lender argues that it is entitled to equitable subrogation based on the following assertions: 1) by providing the loan that fully paid off the Debtor's obligation to Bank OZK, Pivot Lender should be equitably subrogated to the senior security position originally held by Bank OZK's deed of trust regardless of the Washington's mechanics' lien statute; 2) that its knowledge of Walsh's construction lien is irrelevant to the operation of equitable subrogation; 3) that Walsh is not prejudiced by the application of equitable subrogation as Walsh will remain in second position to a portion of the Pivot Lender Loan balance just as it was to the Bank OZK loan balance; and 4) following payoff of the Bank OZK debt, Walsh's action in bonding around its subcontractors' liens in reliance on its perceived senior position did not create prejudice precluding subrogation.

## ANALYSIS

### 1. Equitable Subrogation Generally

Generally, the doctrine of equitable subrogation allows a lender whose loan discharges an existing debt to be subrogated to the paid creditor's lien position. The Washington Supreme Court has adopted the Restatement § 7.6 approach to equitable subrogation. *Columbia Cmty. Bank v. Newman Park, LLC*, 177 Wn.2d 566, 580, (2013) ("We now explicitly adopt Restatement (Third) § 7.6 in full."). The Restatement § 7.6 provides:

> (a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.
> (b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:
> …

> (4) upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

Restatement (Third) of Property (Mortgages) § 7.6 (Am. L. Inst. 1997).

### 2. Knowledge of Intervening Liens

Walsh cites to *Kim v. Lee*, 145 Wn.2d 79 (2001), *as amended* (Dec. 12, 2001), *opinion corrected*, 43 P.3d 1222 (Wash. 2001) in arguing that subrogating Pivot Lender to the senior security position held previously by Bank OZK would be inequitable as Pivot Lender had knowledge of Walsh's construction lien at the time Pivot Lender recorded its deed of trust. Walsh is incorrect. Regardless of whether knowledge of intervening liens would have previously precluded the application of equitable subrogation in Washington, it does not now. Pivot Lender correctly states that knowledge of Walsh's construction lien is irrelevant to the operation of equitable subrogation. *See Bank of Am., N.A. v. Prestance Corp.*, 160 Wn.2d 560, 582 (2007) (Washington Supreme Court adopted Restatement § 7.6 comment e approach to knowledge of intervening liens, holding a refinancing mortgagee's actual or constructive knowledge does not preclude application of equitable subrogation.).

### 3. Equitable Subrogation and Mechanics' Liens

Whether Washington's construction lien statute precludes application of the doctrine of equitable subrogation has not been specifically addressed by the Washington Supreme Court.[2] Here, the parties rely primarily on the contrasting

---

[2] "When a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court

**MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT** - 7

approaches taken by the Arizona and Nevada Supreme Courts to the application of equitable subrogation in the mechanics' lien context, despite both states having adopted the Restatement § 7.6. *Compare In re Fontainebleau Las Vegas Holdings*, 128 Nev. 556 (2012) (plain language of Nevada's mechanics' lien priority scheme precludes the application of equitable subrogation) *with Weitz Co. L.L.C. v. Heth*, 235 Ariz. 405 (2014) (Application of equitable subrogation is consistent with Arizona's mechanics' lien statute.). Both the Arizona and Nevada mechanics' lien statutes are similar to Washington's. Washington's mechanics' lien statute provides in relevant part:

> The claim of lien created by this chapter upon any lot or parcel of land shall be prior to any lien, mortgage, deed of trust, or other encumbrance which attached to the land after or was unrecorded at the time of commencement of labor or professional services or first delivery of materials or equipment by the lien claimant.

RCW 60.04.061

Arizona's mechanics' lien statute provides in relevant part:

> The liens provided for in this article, except as provided in subsection B of this section or unless otherwise specifically provided, are preferred to all liens, mortgages or other encumbrances upon the property attaching subsequent to the time the labor was commenced or the materials were commenced to be furnished.

Ariz. Rev. Stat. Ann. § 33-992.

Nevada's mechanics' lien statute provides in relevant part:

---

would reach if it were deciding the case." *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). Here, I must make a reasonable determination as to how the Washington Supreme Court would rule if it were determining this case despite it having not previously addressed this specific question. Even so, I am not precluded from affording relief even when a state supreme court and state legislature have yet to provide a clear rule. *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 649–50 (9th Cir. 2016).

MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT - 8

> The liens provided for in [Nevada's Mechanics' lien statute] are preferred to: (a) Any lien, mortgage or other encumbrance which may have attached to the property after the commencement of construction of a work of improvement.

Nev. Rev. Stat. Ann. § 108.225.

Walsh relies on *In re Fontainebleau* in arguing that, under Washington law, equitable subrogation should not apply to elevate the priority of a subsequent lender's security interest when the intervening interest is a mechanics' lien. In *Fontainebleau*, the Nevada Supreme Court was asked to answer a series of questions certified to it by the United States Bankruptcy Court for the Southern District of Florida, including:

> Whether the Senior Lenders' mortgage is senior to the mechanics' liens by virtue of the legal doctrine of equitable subrogation and/or loan replacement and modification, inasmuch as loan proceeds secured by Bank of America, as administrative agent for the Senior Lenders, were used to completely satisfy a senior mortgage which was rerecorded prior to the commencement of any work on the Project, with the expectation that the new loan would be secured by a lien with the same priority as the loan being satisfied?

128 Nev. 556, 569, n. 2 (2012). Despite having previously adopted the Restatement § 7.6, the Nevada Supreme Court determined that the plain language of Nevada's mechanics' lien statute, *see supra*, affords mechanics' liens an unassailable priority over intervening encumbrances such that the application of equitable subrogation in the mechanics' lien context was prohibited. *Id.* Walsh asserts that "[i]n Washington, in an arguably clearer statute than in Nevada, Washington's legislature — by statute — provides mechanics' lien claimants have an unassailable priority position." Adv. Dkt. 39, p. 6.

Conversely, Pivot Lender cites to *Weitz Co. L.L.C. v. Heth* to support its argument that Washington's mechanics' lien statute does not preclude the application of equitable

subrogation. In *Weitz,* the Arizona Supreme Court expressly disagreed with the reasoning of the Nevada Supreme Court in *Fontainebleau* and determined that applying the Restatement § 7.6 approach to equitable subrogation of a subsequent lien was consistent with Arizona's mechanics' lien statute. *Id.* at 410. The Arizona Supreme Court stated that the Nevada Supreme Court "misapprehends how equitable subrogation operates. When equitable subrogation occurs, the superior lien and attendant obligation are not discharged but are instead assigned by operation of law to the one who paid the obligation." *Id.* (citing Restatement § 7.6 cmt. a.). The Arizona Supreme Court further stated that "nothing in [Arizona's mechanics' lien statute] suggests that the legislature intended to preclude equitable subrogation in the mechanics' lien context." *Id.* Similarly, in Washington "[c]ourts apply equitable doctrines even when the[y] conflict with recording acts or other priority schemes." *Bank of Am., N.A. v. Prestance Corp.*, 160 Wn.2d 560, 571, n. 9.[3]

As in Arizona's mechanics' lien statute, there is nothing in the text of Washington's mechanics' lien statute to indicate that the Washington State Legislature intended to exempt mechanics' liens from equitable subrogation. Moreover, neither the Restatement § 7.6 nor its extensive commentary discuss an exception to equitable subrogation for mechanics' liens.[4] Therefore, I conclude that the Washington Supreme

---

[3] Washington courts apply equitable subrogation in the mortgage context despite the plain language of Washington's real property recording act, which states in relevant part: "A conveyance of real property, when acknowledged by the person executing the same … may be recorded in the office of the recording officer of the county where the property is situated. Every such conveyance not so recorded is void as against any subsequent purchaser … An instrument is deemed recorded the minute it is filed for record." RCW § 65.08.070

[4] Restatement § 7.6 cmt. e, illustration 30 discusses an example of when the holder of a mechanics' lien may be actually prejudiced by application of equitable subrogation. *See infra*. However,

**MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT** - 10

Court would apply the Restatement § 7.6 approach to equitable subrogation in the mechanics' lien context.

### 4. Material Prejudice

Despite the applicability of equitable subrogation to intervening mechanics' liens generally, subrogation would not apply in the present case if it would materially prejudice Walsh. Walsh asserts that equitable subrogation of the Pivot Lender Loan would prejudice Walsh as the loan is for a greater amount and on different terms than the Bank OZK loan, increasing the risk of foreclosure and decreasing its prospects of repayment. Walsh further asserts that it bonded around its subcontractors in reliance on its perceived senior security position.

### A. Inherent Prejudice

Although the record is incomplete as to the full amount and terms of the Pivot Lender Loan, it does appear that Pivot Lender lent substantially more than the amount necessary to fulfill the Debtor's obligation to Bank OZK. However, the Restatement § 7.6 directly addresses this concern in comment e:

> Subrogation will be recognized only if it will not materially prejudice the holders of intervening interests. The most obvious illustration is that of a payor who lends the mortgagor more money than is necessary to discharge the preexisting mortgage. The payor is subrogated only to the extent that the funds disbursed are actually applied toward payment of the prior lien. There is no right of subrogation with respect to any excess funds. See Illustration 28.
>
> Similarly, if the payor demands a higher interest rate than prevailed under the original mortgage loan, the positions of intervening interest holders may be jeopardized, since the increased interest may result in the mortgage's having a higher balance at the time it is later foreclosed.

illustration 30 does not suggest equitable subrogation is inapplicable to intervening mechanics' liens generally.

MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT - 11

> Subrogation should be granted only to the extent of the debt balance that would have existed if the interest rate had been unchanged.

Restatement (Third) of Property (Mortgages) § 7.6, cmt. e (Am. L. Inst. 1997).

Here, Pivot Lender seeks to "split its lien, only claiming seniority to Walsh for the exact amount of Debtor's obligation to Bank OZK and nothing more." Adv. Dkt. 37, p. 9. In essence, Pivot Lender seeks to bifurcate its loan amount and lien, seeking senior priority only as to that amount applied to pay off Bank OZK and any remaining amount to be junior to Walsh's lien. This arrangement would maintain the status quo and place Walsh at no lower a priority and inherently no worse off than it was at the time it recorded its mechanics' lien. Therefore, Walsh would not be materially prejudiced by Pivot Lender's equitable subrogation to Bank OZK's senior position with the limitations on the senior portion articulated in comment e to the Restatement § 7.6.

### B. Actual Prejudice

Walsh also argues that it will suffer actual prejudice from the application of equitable subrogation because it "bonded around [its] subcontractors" in asserted reliance on its perceived senior security position. The Restatement § 7.6 comment f discusses prejudice based on detrimental reliance:

> In virtually all cases in which injustice is found, it flows from a delay by the payor in recording his or her new mortgage … The delay may lead the holder of an intervening interest to take detrimental action in the belief that that interest now has priority. For example, if the payor who discharges a prior mortgage does not immediately record his or her own mortgage, the public records may for some period of time appear to *indicate that the real estate is unencumbered*. One who in good faith *acquires an interest in the real estate during this period* will be severely prejudiced if the payor is permitted to gain priority over that interest by subrogation. In such cases subrogation is denied. See Illustration 30.

MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT - 12

Restatement (Third) of Property (Mortgages) § 7.6 cmt. f (Am. L. Inst. 1997) (emphasis added).

Unlike this discussion in the Restatement § 7.6 comment f, Walsh acquired its interest in the Property by commencing work at a time when the Bank OZK deed of trust was of record. In fact, at no time during construction of the project was the Property unincumbered — Pivot Lender paid off the Bank OZK debt only *after* construction was complete. Walsh has presented insufficient facts to show when it made the decision to bond around its subcontractors, whether this decision was made after the Bank OZK encumbrance was released and before Pivot Lender recorded its deed of trust, whether Walsh's action resulted in any actual prejudice in asserted reliance on a presumption of senior priority, and whether Walsh knew or should have known that Pivot Lender would claim to be equitably subrogated to the Bank OZK position.

### 5. Cross Motion for Summary Judgment

Although I have determined that the Washington Supreme Court would apply equitable subrogation even where the affected intervening interest is a mechanics' lien and that Walsh would not inherently be materially prejudiced by equitable subrogation, that does not fully resolve the respective security positions of the parties. In its response to the Motion, Pivot Lender requested partial summary judgment for declaratory relief that Walsh's lien is junior to Pivot Lender's deed of trust. This request is procedurally improper as it provides inadequate notice as required by Local Rules W.D. Wash. Bankr. 9013-1(d)(2)(D) and I will therefore not consider it.

Moreover, the record taken as a whole is insufficient for me to grant summary judgment to Pivot Lender. As discussed *supra*, the record does not reflect the exact principal, interest, and other charges paid on the Bank OZK loan or the exact manner in which the varying terms may be detrimental to Walsh as compared to those of the Bank OZK loan. Further, the Restatement § 7.6 requires that the party being equitably subrogated "reasonably expected" to receive the senior security interest — Pivot Lender's intent is unclear based on the record before me.

## CONCLUSION

Therefore, based on the foregoing, Walsh's Motion is denied.

///END OF MEMORANDUM DECISION///